**UNITED STATES**

v.

**John L. RICHARDSON, Machinery Technician Second Class, U.S. Coast Guard.**

**CGCMS 24012.**
**Docket No. 978.**

U.S. Coast Guard Court of Military Review.

Sept. 1, 1992.

Military Judge: CDR Richard B. Cole, USCG.

Trial Counsel: LT Mark R. Higgins, USCG.

Assistant Trial Counsel: LT Henry M. Bobotek, USCGR.

Detailed Defense Counsel: LCDR Eglee W. Perez, USCG.

Appellate Defense Counsel: LCDR David H. Sump, USCG.

Appellate Government Counsel: LT Garland M. Walker, USCGR.

Before Panel Two, BAUM, GRACE and BASTEK, Appellate Military Judges.

BAUM, Chief Judge.

## I

### Background

Despite pleas of not guilty and Appellant's testimony denying guilt, a special court-martial composed of officer and enlisted members convicted him in 1990 of one specification of cocaine use in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. The court sentenced Appellant to a bad conduct discharge, confinement for four months and reduction to E–1, which was approved by the convening authority. Subsequently, this Court, after considering three assignments of error, affirmed the findings and sentence on 5 December 1991. *U.S. v. Richardson,* 33 M.J. 1024 (C.G.C.M.R. 1991). Thereafter, Appellant petitioned the United States Court of Military Appeals for

review, assigning as error for the first time that his counsel at trial provided ineffective representation. The Court of Military Appeals, thereupon, remanded the record to this Court for resolution of this new issue 35 M.J. 259 (C.M.A.1992). The matter, having been fully briefed and orally argued, is now ready for decision.

As noted in our earlier opinion, Appellant testified on direct examination that he had intimate sexual contact with a woman who he later found out was a cocaine addict. Appellant believed their "french kissing" accounted for his positive showing for cocaine on a urinalysis test the next working day. In support of this testimony, a defense witness, Marta, testified that her cousin, Gloria, who was Appellant's sexual partner, is a cocaine addict and that Marta's mother had found two bags of cocaine in Gloria's pants the day after Gloria was with Appellant. Moreover, Marta testified that Gloria admitted using cocaine on the day she was with Appellant. Gloria also said that Appellant did not know of her use and that he had not used cocaine. The judge allowed this testimony upon finding that Gloria was not available to testify, based on statements from the Government and defense. In further support of the defense theory of unknowing ingestion of cocaine through "french kissing," the Government toxicology expert testified that it is possible to get cocaine from kissing someone who uses that drug.

## II

### Asserted Pretrial Ineffectiveness

On remand, Appellant, citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *U.S. v. Polk,* 32 M.J. 150 (C.M.A.1991) and *U.S. v. Scott,* 24 M.J. 186 (C.M.A.1987), has asserted that trial defense counsel was ineffective in her representation due to failure to adequately research the plausibility of her chosen defense strategy and the plausibility of other available defenses not raised at trial. Appellant's brief amplifies these assertions to encompass counsel's failure to pursue the whereabouts of Gloria as the only person who would know with certainty how Appel-

lant may have ingested sufficient cocaine to test positive 25 hours later. Appellant sees this failure as an indication that counsel did not sufficiently investigate the merits of the case, resulting in the absence of a critical witness as discussed in *U.S. v. Scott, supra.*

In addition, Appellant faults counsel's decision "to use a hostile, experienced Government toxicology expert, on cross examination, to present sufficient scientific foundation to support the saliva ingestion theory," without seeking out other more favorable experts who could be called as defense witnesses. Appellate Defense Counsel's Brief at 9. Moreover, Appellant says there were other, possibly more plausible, means of unknowing ingestion revealed to counsel by him that counsel did not pursue. Appellant says he told counsel there were open unattended beer bottles during the time he was with Gloria and that, in addition to having intercourse with her, he had performed oral sex on her.

Appellant contends now that if counsel had conducted adequate research, she would have found literature that says the effects of cocaine are closely linked with sexual enhancement, and that users may ingest cocaine orally for such purposes or they may place cocaine directly on genital areas. According to Appellant, if this information had been pursued, along with locating and interviewing Gloria, it might have produced information that cocaine was placed in Appellant's beer bottles without his knowledge or that Gloria placed cocaine directly on her genitals, both of which could have resulted in Appellant's unknowing ingestion.

During argument before the Court, appellate defense counsel limited his contentions to three asserted specific shortcomings by counsel: (1) trial defense counsel's failure to make positive efforts to locate Gloria, who was an outcome determinative witness in Appellant's view, (2) trial defense counsel's failure to consult additional experts in search of a more favorable witness to support the most effective theory of innocent cocaine ingestion, and (3) trial defense counsel's decision to rely upon the

Government expert witness to support the defense theory of ingestion through "french kissing."

## III

### *Strickland/Scott Test for Pretrial Ineffectiveness*

■ *Strickland v. Washington, supra,* provides the test for evaluating claims of ineffective assistance of counsel, which the Court of Military Appeals has applied to the military, *U.S. v. Scott, supra,* and this Court has followed. *U.S. v. Ryder,* 34 M.J. 1077 (C.G.C.M.R.1992), *U.S. v. Townsend,* 34 M.J. 882 (C.G.C.M.R.1992), *U.S. v. Leaver,* 32 M.J. 995 (C.G.C.M.R.1991), *U.S. v. Puckett,* 32 M.J. 783 (C.G.C.M.R.1991). That test requires the accused to show: (1) that counsel made errors so serious that the defense attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment and (2) that such deficient performance prejudiced the defense to the extent of depriving the accused of a fair trial, that is, one with a result that is reliable. This Court's prior cases have applied this test to counsel's performance during the trial itself. Here, Appellant challenges the effectiveness of representation prior to trial. *U.S. v. Scott, supra,* provides the necessary guidance for evaluating counsel performance at that stage.

In *Scott,* as in this case, the quality of counsel's preparation for trial, including pretrial investigation, was at issue. In judging counsel's performance before trial, the court in *Scott* quoted from *Strickland v. Washington, supra:*

Because "[i]nvestigation is an essential component of the adversary process," *Wade v. Armontrout,* 798 F.2d 304, 307 (8th Cir.1986), that [adversarial] testing process generally will not function properly unless defense counsel has done some investigation. Thus, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary ... [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference

to counsel's judgments." *Strickland v. Washington, supra,* 466 U.S. at 691, 104 S.Ct. at 2066.

*U.S. v. Scott, supra* at 188.

## IV

### *Scott and Richardson Facts Compared*

In *Scott, supra,* the facts revealed that counsel decided to rely on the defense of alibi, but did not promptly investigate, seek, or interview potential alibi witnesses, or pursue any alibi evidence. This inaction was not due to strategic considerations, but due to the inexplicable hope that the case would not go to trial. Counsel also did not prepare any witnesses for trial, including the accused, who testified in his own defense. Furthermore, counsel failed to follow up on information provided by a volunteer investigator which would have produced corroboration for the alibi defense. Based on these, and other failings, the court found that counsel's performance fell far short of the standard set forth in *Strickland v. Washington, supra.*

Appellant contends that his situation comes squarely within the ambit of *U.S. v. Scott, supra.* We find, however, a distinctly contrasting set of facts presented by the instant case. Here, the defense counsel investigated matters before trial, interviewed potential witnesses, and prepared those who actually testified. After thoroughly interviewing Appellant, counsel fully developed a viable defense which Appellant was prepared to support with his testimony. Moreover, trial defense counsel attempted to locate and interview witnesses who could corroborate the chosen defense.

After the first meeting with Appellant, counsel and Appellant went looking for Gloria where she had been staying in Puerto Rico, at Marta's home. Instead of Gloria, counsel found and interviewed Marta and Marta's mother. These interviews revealed that Gloria had returned to the United States and had moved to an unknown location. In addition to that news, questioning of Marta and her mother developed the information that Gloria was a known cocaine addict and that Marta had personal-

ly observed Gloria using cocaine orally on a number of occasions. Marta's mother seemed hostile, but Marta indicated a willingness to testify to these matters. When repeated efforts to elicit leads to Gloria's whereabouts were rebuffed, counsel made a reasoned decision to call Marta as a witness instead of pursuing a search for Gloria. In the process, counsel rejected Marta's mother as a witness because of her hostility and lack of first-hand knowledge of Gloria's oral ingestion of cocaine.

Appellant faults counsel for the decision not to continue looking for Gloria. He also challenges counsel's decision to rely exclusively on the Government expert for corroboration of the defense theory of innocent ingestion and not consult additional experts for support. Here, too, there is a distinct difference from the facts in *Scott, supra.* The counsel in *Scott,* did essentially nothing in the way of seeking and preparing corroboration witnesses; whereas, in this case, counsel interviewed many potential defense witnesses. Included among those interviewed was the expert who was ultimately called by the Government, after defense counsel informed trial counsel and the court that she would call him for the defense. Prior to making that decision, counsel talked to the expert about cocaine metabolization and the probabilities of modes of cocaine ingestion. The expert confirmed counsel's belief "that in a 'french kissing' situation cocaine could be transferred unknowingly to a non-user and that the amount of cocaine found in a non-user was directly proportional to certain factors," including intensity, duration and degree of the kissing. Detailed Defense Counsel's Affidavit of 16 March 1992 at 4. Counsel says she did not search for another expert after making a judgment call that the expert interviewed would testify that cocaine could be transmitted unknowingly through kissing to a non-user.

V

*Application of Strickland/Scott Tests*

A.

Test for Counsel Deficiencies

■ As previously indicated, the test for determining whether decisions not to pur-

sue certain lines of inquiry before trial constitute ineffective representation was set out in *Scott, supra* at 188 in a quote from *Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. at 2066. That quote ends with the statement that: "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

We have applied that test to detailed defense counsel's decisions not to expend further efforts looking for Gloria or for other experts. Under the circumstances, after counsel had already found and interviewed the necessary corroborative witnesses, with whom she was satisfied, we find that counsel's decisions to terminate her investigations were manifestly reasonable. With regard to Appellant's assertion in his brief that counsel was remiss in not pursuing other cocaine ingestion theories, we find the explanations in counsel's affidavits, that Appellant failed to tell her about oral sex and that he was unable to give positive testimony to support a "cocaine-in-the-beer" defense, sufficiently support her actions. Counsel outlines in detail the many steps taken preparing for trial that fully sustain our conclusion that pretrial efforts were not deficient in any respect under the standards of *Strickland v. Washington, supra,* and *U.S. v. Scott, supra.*

B.

Test for Prejudice

Having ascertained that counsel's decisions and actions passed the first part of the *Strickland* test, we need not proceed any further. In light of the dissenting view of Judge Grace, however, we believe it important to express our conclusions with respect to the second element of that test. In order to find ineffective representation, we would have to see resultant prejudice from deficiencies that deprived Appellant of a fair trial. In this regard, Appellant has not made out his case. He has not come up with any experts at this point

who would say anything more favorable to him than the one who testified and he has not found Gloria.

Appellant's various arguments depend on favorable testimony from Gloria that is stronger and more effective than Marta's. Without a statement from Gloria, that expectation is speculative at best. It is just as likely that Gloria would have refused to incriminate herself, or even denied using cocaine. Moreover, there is a possibility that Gloria would have been a hostile witness and would have implicated Appellant in the intentional ingestion of cocaine that night. In that event, finding Gloria could have resulted in the decimation of any defense on the merits. This possibility further underscores the reasonableness of counsel's decision to proceed with the favorable testimony at hand. In contrast with the facts in *Scott, supra,* where there was a statement from the uncalled witness, we simply do not know what Gloria would have said if found. In short, Appellant has not shown how any amount of additional investigation or research would have produced a better defense.

With respect to assessing for prejudice, the Court of Military Appeals, in *U.S. v. Scott, supra,* said:

> The test for prejudice when a conviction is challenged on the basis of actual ineffectiveness of counsel "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington, supra* at 695, 104 S.Ct. at 2068–69. This requires a court to consider the totality of the evidence before the factfinder.

*U.S. v. Scott, supra* at 189.

If counsel had come up with other theories of unknowing ingestion of cocaine, pursued other experts to support those theories, and searched for the missing witness, Gloria, we are not convinced there is a reasonable probability that such efforts would have produced more favorable evidence. Consequently, having considered the totality of the evidence at trial, which included a urinalysis test result showing 1769 nanograms of cocaine metabolite, we find that there is no reasonable probability that additional investigation, as urged now by Appellant, would have resulted in the factfinders having a reasonable doubt as to Appellant's guilt. Appellant has not met the *Strickland* test in either respect. Appellant's assignment of error is rejected.

## IV

### *Conclusion*

The conclusion reached on 5 December 1991, when we first reviewed this record, is repeated. We have determined that the findings and sentence are correct in law and fact, and on the basis of the entire record should be approved. Accordingly, the findings and sentence approved below are affirmed.

Judge BASTEK concurs.

GRACE, Judge (dissenting).

I dissent. I must disagree with my brothers. I would remand this case for a retrial. *Gloria is the key to the defense in this case.* The trial defense counsel should have located and talked to Gloria. She could have asked for a continuance which, based on the reluctance of the military judge to declare Gloria unavailable, would probably have been granted. She could have asked for investigative assistance to locate Gloria. Although the trail appeared cold, some expert investigative work would probably have turned up Gloria.

I agree with my brothers that Gloria may have turned out to be more damaging to the defense than helpful. I do not know. Rather than speculate or assume what she might have testified to, or whether she would have testified at all, I would send this case back to be retried.

Other issues raised in this case would also be dealt with by finding and interviewing Gloria. She might be able to confirm or deny cocaine use, putting cocaine on her genital areas or putting cocaine in the beer.

The answers to those questions certainly will lead to one type of defense or another and the kind of expert testimony that will be required.

In my mind, I cannot be sure whether Gloria would be dispositive of the issue of guilt or innocence. But rather than speculate I would send this case back for a retrial.